Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On 18 January and 28 June 1994, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 18 January and 28 June 1994, the Employer-Employee relationship existed between the Plaintiff and the Defendant-Employer.
3. Plaintiff's average weekly wage was sufficient to generate the maximum compensation rate for 1994, which was $466.00.
4. The Plaintiff sustained an admittedly compensable back injury on 18 January 1994, and Forms 21 and 26 were entered into and approved by the Industrial Commission.
5. Plaintiff is seeking temporary total disability compensation for the following periods of time: 28 June 1994 through 6 July 1994; 21 September 1994 through 30 November 1994; 16 January 1994 through 14 March 1995; and 13 April 1995 through the present time.
6. The parties stipulated the issues to be determined are as follows: (1) Is the Plaintiff totally disabled due to post traumatic stress disorder with anxiety and depression related to the admittedly compensable physical injuries sustained on 18 January 1994? and (2) Did the Plaintiff sustain a back injury as a result of a specific traumatic incident arising out of and in the course of her employment with the Defendant on 28 June 1994?
 ***********
Based upon all of the competent evidence from the record herin, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was a 46 years old divorced female and had been employed as a flight attendant for the Defendant for 25 years. She graduated from high school and completed two to three years of college.
2. As a result of the admittedly compensable incident of 18 January 1994, the Plaintiff sustained cervical and thoracic strains.
3. Three of the Plaintiff's treating physicians have stated that she has recovered from her admittedly compensable cervical and thoracic strains, and released her to resume her regular job duties as a flight attendant.
4. The Plaintiff actually returned to work as a flight attendant after 18 January 1994 and performed her regular job duties for the following periods of time:
6 April 1994 through 14 April 1994
13 May 1994 through 1 June 1994
(50 hours per month)
2 June 1994 through 28 June 1994
6 July 1994 through 18 July 1994
19 July 1994 through 7 September 1994
(50 hours per month)
7 September 1994 through 20 September 1994
1 December 1994
2 December 1994 through 12 January 1995
(50 hours per month)
13 January 1995 through 15 January 1995
15 March 1995 through 12 April 1995.
5. The Plaintiff, on 28 June 1994, injured her back again when she was thrown forward while riding in a hotel van which braked suddenly in traffic. The stop was moderate in nature, and a witness was surprised that the Plaintiff was thrown forward. The Plaintiff denied being seriously hurt immediately thereafter, but the Plaintiff was restricted from working for eight days following that incident. She then returned to work on 6 July 1994.
6. The Plaintiff has a well-documented history of abusing alcohol since her teens, and began attending Alcoholics Anonymous meetings in 1992.
7. The Plaintiff suffered from depression, anxiety, and long-standing personality disorders, including personality disorder with passive-aggressive features; personality disorders with histrionic, borderline, and narcissistic features; borderline personality disorder; and Cluster B traits, prior to 18 January 1994. Symptoms of those various conditions include inflexibility, poor adaptation, internal anger, pessimism about the future, alcohol dependence or abuse, sleep disturbance, appetite disturbance, low self-esteem, poor concentration, poor memory, and guilt. Patients suffering from those conditions are also prone to suicidal, self-injurious, self-defeating actions.
8. The Plaintiff's first marriage ended in 1978 because her husband was a bigamist.
9. The Plaintiff's second marriage ended in the mid-1980s due to of her husband's drug addiction and physical abuse.
10. The Plaintiff was robbed at gunpoint in 1986, as a result of which she experienced nightmares for several months.
11. One of the Plaintiff's sisters was diagnosed with a terminal illness in 1994.
12. The Plaintiff learned in September of 1994 that a second of her sisters is addicted to crack cocaine.
13. The Plaintiff was distressed in 1994 about the deterioration of her aging parents, as a result of which she was required to take on additional responsibility for her extended family.
14. The Plaintiff became hysterical on 7 September 1994 about the fatal crash of USAir flight 427 in Pittsburgh. This event started a downward course for the Plaintiff, and she continued to have flashbacks about the crash for several months. In late September of 1994, the Plaintiff submitted an injury report to the Defendant in which she listed Flight 427 as the flight which, along with the 18 January 1994 flight, caused her alleged disability that is the subject of this matter.
15. Since 21 September 1994, the Plaintiff alleged that she is totally disabled from working due to psychological complaints, including post traumatic stress disorder with anxiety and depression, related to her admittedly compensable cervical and thoracic strains sustained on 18 January 1994. At the hearing before the Deputy Commissioner, she listed her current complaints as feeling incompetent as a flight attendant; difficulty sleeping; recurring nightmares of evacuating an airplane; crying spells; difficulty concentrating; fear that she would kill someone; and the feeling that death, in the form of the "Grim Reaper," was following her.
16. Post traumatic stress disorder is a mental condition which requires for its diagnosis that the patient had been exposed to a traumatic event in which she experienced, witnessed, or was confronted with an event or events that involved actual or threatened death or serious injury, or threat to the physical integrity of self or others; and that the patient's response involved intense fear, helplessness, or horror.
17. The incident which Plaintiff contends caused her to develop post traumatic stress disorder occurred on 18 January 1994 while the Plaintiff was performing the safety demonstration. The credible evidence of record reflects that the pilot braked the plane during taxi, as a result of which the Plaintiff fell backward and hit her head, sustaining cervical and thoracic strains. The stop was unremarkable, and contrary to what she told her doctors, the Plaintiff sustained no loss of consciousness and was able to walk off the plane.
18. The admittedly compensable incident of 18 January 1994 did not involve actual or threatened death or serious injury, or a threat to the physical integrity of the Plaintiff or others; nor did the Plaintiff's response to that event, as reported by witnesses and Mercy Hospital Emergency Room records, involve fear, helplessness, or horror. Accordingly, it does not constitute a traumatic event which would support a diagnosis of post traumatic stress disorder.
19. A diagnosis of post traumatic stress disorder depends for its accuracy on the truthfulness of the subjective history provided by the patient. The risk of making an inaccurate diagnosis of post traumatic stress disorder based on the patient's untruthful reporting may be mitigated by administering objective tests and reviewing collateral information.
20. The Plaintiff has been treated and/or evaluated for her psychological complaints that are the subject of this claim by Drs. Celestin, Dahmes, Detrinis, Dietz, Khurana, Sumner, and Warren. The undersigned give greater weight to the medical opinions of Dr. Warren, who was the only doctor who had the advantage of reviewing the Plaintiff's objective test results and collateral medical records when making his diagnosis. The other doctors based their diagnoses solely on the Plaintiff's subjective reporting.
21. Dr. Warren concluded and the Commission so finds that the Plaintiff does not suffer from post traumatic stress disorder, that she did not sustain any permanent psychological impairment and is not disabled from working as a result of the incident of 18 January 1994. Dr. Warren's only concerns about her work capacity were related to whether she is currently using alcohol.
22. The Plaintiff exaggerated the effect of her 18 January 1994 injury on her psychological condition, as evidenced by her increasingly exaggerated accounts of the incident of 18 January 1994 to her medical care providers and at hearing, most notably the following: her accounts of being knocked unconscious and carried off the plane on a stretcher; her inconsistent and inaccurate reporting regarding the date of onset of her psychological problems; her failure to report any psychological complaints associated with the incident of 18 January 1994 until more than six months after it occurred; her tendency to downplay the effects of numerous significant psychosocial stressors in her life; her history of sustaining an unusually high number of work related injuries with corresponding leaves of absence over the course of her employment as a flight attendant; her exaggerated response style on the MMPI-2; her long-standing personality disorders; her history of alcohol abuse since her teens; her pattern of flying regularly for pleasure throughout the pendency of this claim, despite her assertion that she is too afraid of airplanes to work as a flight attendant; her assignment of blame for all her current problems to a single event whereby she sustained relatively minor physical injuries which have since resolved; and her demeanor at the hearing before the Deputy Commissioner.
The Plaintiff's testimony and other evidence, medical or lay, which would tend to establish that the physical injury she sustained on 18 January 1994 caused her to develop psychological problems which have prevented her from returning to work for the Defendant since 20 September 1994, with the exceptions of a few brief and unsuccessful attempts, was not accepted as credible by the Deputy Commissioner. The Full Commission declines to reverse the credibility decision made by the Deputy Commissioner.
23. The various psychological symptoms which the Plaintiff asserts have prevented her from returning to work as a flight attendant are not the result of her 18 January 1994 injury, but are due to a combination of her wholly unrelated preexisting depression, anxiety, and personality disorders; her long-standing alcohol abuse; and the various psychosocial stressors to which she has been exposed both prior to and during the pendency of this claim.
24. After 20 September 1994, the medical treatment Plaintiff received is due to psychological complaints related to a combination of her preexisting depression, anxiety, and personality disorders; her long-standing alcohol abuse; and the various psychosocial stressors she has been exposed to both prior to and during the pendency of this claim.
25. Plaintiff's current psychological conditions are not causally related to her 18 January 1994 injury by accident. Plaintiff's psychological conditions are caused by the many other stressors in her life.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a result of the 18 January 1994 and 28 June 1994 injuries by accident giving rise hereto, the Plaintiff sustained cervical and thoracic strains. Any disability resulting from these two incidents resolved on or prior to 21 September 1994. Plaintiff has received temporary total disability compensation for the periods of disability as a result of these two incidents. The psychological symptoms which the Plaintiff has reported since 21 September 1994 are not due to the 18 January 1994 and 28 June 1994 injuries, but are due to a combination of the Plaintiff's preexisting depression, anxiety, and personality disorders; her long-standing alcohol abuse; and the various psychosocial stressors she has been exposed to both prior and during the pendency of this claim.
2. Plaintiff is entitled to payment by Defendants of any medical treatment incurred or to be incurred for her compensable injuries sustained on 18 January 1994 or 28 June 1994. The approved medical care does not include treatment for symptoms associated with her unrelated psychological complaints. G.S. N.C. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, the Plaintiff's claim for additional temporary total disability compensation must be, and the same is DENIED.
2. Defendants shall pay medical expenses, if any, incurred by plaintiff as a result of the 18 January 1994 and 28 June 1994 injuries by accident.
3. Each party shall bear its own costs, except that the Defendants shall pay expert witness fees in the previously approved amounts of $300.00 to Dr. Detrinis, $150.00 to Dr. Dietz, $300.00 to Dr. Celestin, $300.00 to Dr. Dahmes, $300.00 to Dr. Warren, and $300.00 to Dr. Bernstein.
This the _____ day of June 1998.
 S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN JR. CHAIRMAN
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
LKM/bjp